CHIEF CONSOL. MINING CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4503. Decided October 5, 1927. (260 P. 271.)

*Badger, Rich & Rich,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

THURMAN, C. J.

This is a proceeding to review an award of the Utah Industrial Commission under the provisions of the Utah Industrial Act. Comp. Laws 1917, §§ 3061-3165.

On April 9, 1926, the defendants, as widow and minor children of one Jack McKellar, filed their petition with the Industrial Commission for compensation, alleging that on or about June 29 or 30, 1925, Jack McKellar was injured by an accident arising out of or in the course of his employment with the Chief Consolidated Mining Company, from which injury he died on or about July 13, 1925. It is alleged that the injury was caused by a falling rock striking him on the back while working as a miner under ground for said mining company, an employer subject to the provisions of the Utah Industrial Act. Hearings were had on the petition, and on September 9, 1925, the commission made findings of fact, conclusions, and award in favor of the petitioners, awarding to them compensation as dependents of the deceased. The commission found that the deceased was in the employ of the Chief Consolidated Mining Company; that the Standard Accident & Insurance Company carried the insurance; and that the deceased, Jack McKellar, received the injury from which he died in the course of such employment. Compensation was awarded accordingly as provided by statute. An application for rehearing was seasonably filed with the commission, which application was denied.

The mining company and the insurance company, as plaintiffs here, have instituted this action to annul the award.

The finding of the commission as to the cause of the injury is vigorously assailed, and is one of the grounds relied on by plaintiffs for annulling the award. The finding objected to reads as follows:

"That Jack McKellar, on or about June 29 or 30, 1925, was either struck by a falling rock on the back or he struck his back against the cage. The commission feels certain that on or about said date Jack McKellar, while regularly employed by the Chief Consolidated

Mining Company, injured his back, and as a result of said injury he died on July 13, 1925."

This finding is ambiguous, indefinite, and uncertain, and, of course, is not in proper form. We regard this objection as of minor importance for it is a defect which evidently can be corrected by a positive, definite finding.

The more serious question, and one not entirely devoid of merit, is that there is no competent evidence to support a finding for an award of compensation, and that therefore the commission exceeded its jurisdiction in making such award.

M. J. Crow, a partner of the deceased workman, testified as a witness for the petitioners. He and deceased were working in the bottom of the shaft. He was uncertain as to the exact day, but it was in the latter part of June, 1925. He testified that he knew that deceased got hit with a rock. He described the circumstance which was to the effect that, while working there on that occasion, deceased grabbed him by the arm, and said, "For God's sake get back out of there; the rocks are coming down, and you will be murdered." Deceased also said he got hit with a rock on the back. They stepped back, and stayed there awhile, "until they saw nothing falling and hitting in the water at the bottom of the shaft." He said the falling rock was probably caused by an overloaded cage. Afterwards they resumed their work. Witness also testified that some time after this—he was not certain how long—the deceased became sick, and called for the cage. Witness rang the bell, and deceased went up. Witness testified he reported to the shift boss that deceased got hit with a rock. On further examination by the insurance company's representative witness said he saw rocks falling, and saw them splashing in the water; that the way some of them splashed they might have weighed 50 pounds; that deceased and witness resumed their work, and deceased never said any more till he went out sick. The whole tenor of the testimony of this witness is to the effect that neither

he nor deceased, at that time, considered it a serious accident.

Karl G. Hanney, for petitioners, testified he was top car man working in the mine when the bell rang for the cage. When deceased came up he fell unconscious on some timbers. When he came to he said he got hit with a rock. He said he was hit on the back. Witness did not report to anybody that deceased complained of being hit with a rock. Gailbraith, the acting shift boss, was there, and saw that deceased was unconscious.

Daniel Garrett, for petitioners, testified he was hoisting engineer at the mine at the time in question, and the cage was at the top. He got nine bells, which is a danger signal. He lowered the cage, and deceased came up. "He got off the cage, walked four or five steps, fell on a pile of timber, and he was out, just as dead as ever." Witnesses Hanney, Curtiss, and Gailbraith were there, and went to him. It was five or ten minutes before he came to. Witness was asked what deceased said, and answered: "He says he got hit on the back with a rock." He never looked at deceased's coat to see if there were any marks on it.

Mrs. McKellar, petitioner, testified that all she knew about the accident was that on July 3, 1925, as she was getting ready to go back into the hospital in Salt Lake City, deceased was going to Leamington to take care of some mining claims, and asked witness to paint his back with iodine, and that she did so. He said he was stiff and sore. There was an abrasion on the left side of his back, and it was swollen and inflamed. It looked as if it had pus in it. He said he got hurt slightly up at the mine. He never told witness anything about it. She was getting ready to go to the hospital, and was in a nervous condition, and he never told her. She did not have an idea that it was anything serious. When he got to Leamington Dr. Estes also painted his back, and advised that he be taken home as quickly as possible. They took him to Springville. Her physician there was Dr. Anderson, and he treated him. She did not think

Dr. Anderson asked him about the history of the case. She thought he just treated him, and gave him some tablets. On cross-examination she said deceased always changed his clothes when he went into the mine, and that she never saw the clothes he wore there. The place she saw on his back was about the size of a dollar. Dr. Anderson said he had blood poison. Deceased never told witness how it happened. He never told her those things. He was reluctant to tell her because she worried so much. Dr. Hatch had told him that he should not tell her unpleasant things because of her nervous state. Deceased never said anything to her about the accident until July 3, 1925.

Mrs. Osier, for petitioners, testified to deceased's condition at Leamington on July 3d. He was treated there by Dr. Estes, who put disinfectant on his back, and told witness to put hot cloths on it; that she did so the rest of the day, and all that night; that the wound was a little gouge on the back; that he was too ill that day to work on the mining claims. Witness said deceased told her he guessed that little hurt he got was going to develop into something. It was inflamed, and looked bad. It looked like it might be infected. Deceased said he got hurt in the mine. At one time he said he was struck.

Dr. Osler, one of the physicians of the Chief Consolidated Mining Company, testified that deceased did not come to him for treatment; that, in answer to a call from Dr. Anderson stating that Jack McKellar was quite sick from an infection arising either from a bite or a scratch, he advised sending him to the Holy Cross hospital; that was all he knew about it.

Dr. Estes testified he treated Jack McKellar in July, 1925; that he had a sore on his back, and had fever chills. Witness found an abrasion or open space, not exactly a lacerated area. It was about the center of the back. From the size and condition he could not tell what caused it, but it had evidently become enlarged. Deceased did not go into the point as to who he was working for or how he was in-

jured. Deceased was traveling through, and called on witness as a transient physician until he could get home. Witness said the injury could have come from a number of causes. He did not think it came from the bite of a deer fly; that deceased did not know exactly what caused the injury, but did not think it had rubbed on the car; he was not sure. Witness said the wound was nearly as large as the palm of his hand; that any abrasion of the skin could have been the starting point of an infection; that any bruise could have been the entering point; that an abrasion could have been caused through his clothing—he had seen abrasions made through clothing.

Dr. Anderson testified that about the first part of July, 1925, he treated Jack McKellar at the home of his mother-in-law in Springville; that his temperature was 103, and his pulse 110; that an examination of his back showed an abrasion—a very large scratch rapidly spreading infection up the back and to the sides of the abrasion; that he was suffering with blood poison; that they did not tell witness the cause of the wound, except something about working at a mine and getting scrubbed or pinched; that his impression was that they said it was an accident. Witness was aware of the fact that deceased was working for some mining company, and asked him if he had hospital benefits; that deceased said he had, and requested witness to call Dr. Osler at the mine. Witness considered it an accident, but made no report to the commission, as he understood the company carried its own insurance; that the only thing witness was concerned with was in getting McKellar into the hands of the people he was working for, and at his request called Dr. Osler. Deceased was delirious, and witness did not get much history of the matter; that deceased's wife said he had an accident; that in his lucid moments deceased said something about coming up in a bucket, and said his back was scrubbed, or something of that sort; that the history of the case was not satisfactory; that deceased was a very sick man; that witness did not think the wound was

from the bite of a deer fly; that such a wound might have been caused by a rock falling on deceased's back, even if he had on a heavy rubber coat; that, if he was struck by a falling rock, and the part became infected, and he should scrub his back on the cage, it is possible he might have thought he had scratched his back. Witness did not remember that anything was said about a falling rock; that they seemed more concerned about his condition than about the cause of it.

Dr. J. W. Sugden testified that he made the death certificate in which it was stated the contributory cause of death "was abrasion on back—mine accident;" that deceased said that, while working he had occasion to crawl under the cage in the mine, and in coming out the corner of the cage in some way was sticking down, and that he caught himself on the back while crawling out; that, when McKellar arrived at the hospital, he had an open infection on his back; that deceased never mentioned about being hit with a rock, nor about being brought out of the mine and becoming unconscious; that deceased was sick, but could answer coherently. Witness could not tell whether deceased's back was scrubbed or not; that it was an open infected area. Witness said that, if a rock should fall on a man from a perpendicular height of 100 feet, it would cause an abrasion of that kind through a heavy rubber coat.

With the exception of some testimony tending to impeach the testimony of the witness Crow, the above statement contains the substance of all the evidence material and necessary to a determination of the issues involved. Indeed, it may be said that, in view of the limitations upon the power and jurisdiction of this court in cases arising under the Industrial Act, much of the testimony above set forth is testimony which this court has no power to consider for the purpose of annulling the award. We have stated it here solely because it is relied on by one or more of my associates as of controlling importance. It is admitted by those who entertain opposite views that the

declaration of the deceased made to his companion when the rocks were falling, that he had been hit in the back with a rock, was of the res gestae, and that the evidence as to that was not open to objection that it was hearsay. So, also, in the same connection, it must be remembered the witness testified to hearing the rocks fall and splash in the water below. Inasmuch, then, as it was afterwards demonstrated beyond a doubt that deceased had received an injury to his back, which according to all the testimony, might have been caused by a falling rock, which injury resulted in blood poisoning from which he thereafter died, the contention that there is no evidence to support an award is, in my opinion, wholly untenable. But it is argued by those who disagree with me that the disserving statements made by the deceased as to another cause of the injury neutralized the testimony as to his having been struck with a rock, and that that, together with impeaching evidence, completely destroys the effect of what would otherwise be substantial evidence. Hitherto this court, in cases arising under the Industrial Act, has uniformly held that the Industrial Commission are the sole judges of the credibility of the witnesses, the weight of the evidence, and the facts, and that their decision thereon is final, if there is any substantial evidence to sustain it. The proposition that this court may, or should, take into consideration matters which by the Industrial Act have been conferred exclusively upon the commission is new in this jurisdiction, and, in my opinion, is revolutionary in its tendency. Such a rule, if now adopted, will greatly extend the hitherto recognized limits of the jurisdiction of this court, and fly in the face of the statute. Comp. Laws Utah 1917, § 3148a, as amended by Laws Utah 1919, c. 63, at page 165. The statute reads:

"The findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review."

By observing the provisions of that statute, and conceding to the commission the jurisdiction conferred upon it,

there is no difficulty in properly determining the issues involved in the instant case. It cannot be successfully denied that there is substantial evidence in the record that in the latter part of June, 1925, Jack McKellar, while engaged in his employment as a miner for the plaintiff mining company, was struck in the back by a falling rock; that it caused an abrasion or wound in his back, resulting in blood poisoning, from which he died in a few days thereafter. Testimony was also admitted to the effect that, when deceased came to the top of the shaft some time after he claimed to have been struck with a rock, he fell in a faint, and, on becoming conscious, he was asked what was the matter. He again said he had been struck with a rock. It is contended that this statement of deceased was hearsay, and therefore inadmissible. As it is not contended that the award should be annulled on that ground, it is unnecessary to discuss the merits of that question in the instant case. For present purposes it is sufficient to say, as before stated, there is competent evidence to prove that deceased was struck by a falling rock causing an injury which eventually resulted in his death. There is also evidence of admissions by the deceased from which it might be inferred that his injury was caused in some other way. These admissions raised a conflict in the evidence—a matter exclusively within the jurisdiction of the commission to determine what the fact is.

For the reason that the finding of the commission as to the cause of the injury is ambiguous and uncertain, and that it cannot be determined therefrom whether the commission intended to find that the deceased was struck by a falling rock, as testified to by his companion, or struck or rubbed his back against the cage, the award is annulled, and the cause remanded for such further proceedings as the commission may determine, within the limits of their jurisdiction.

CHERRY, GIDEON, and HANSEN, JJ., concur.

STRAUP, J. (dissenting). It is claimed by the Chief Consolidated Mining Company, and by its insurance carrier, the Standard Accident Company, that the evidence is insufficient to sustain the award in the particular that there was no substantial competent evidence to show that the deceased sustained an injury or met with an accident in the course of his employment, or that his death was due to an accident or injury arising out of or in the course of his employment.

In the application for an adjustment of the claim filed with the commission, it is alleged that the deceased died "as the result of an accident arising out of or in the course of his employment while regularly employed by the Chief Consolidated Mining Company," and that the nature of the work at which he was engaged at the time of the accident was "that, while engaged in underground mining, he was struck on the back by a falling rock," and that his death "was the result of cellulitis [inflammation of the cellular or areolar tissue] and adenitis [glandular inflammation], resulting directly from the accidental injury referred to in the application." It was not alleged that the injury was caused in any other manner. The commission found "that Jack McKellar, on or about the 29th or 30th day of June, 1925, was either struck by a falling rock on the back or he struck his back against the cage. The commission feels certain that on or about such date Jack McKellar, while regularly employed by the Chief Consolidated Mining Company, injured his back, and as a result of said injuries he died on July 13, 1925." It is claimed: (1) That the findings in the alternative—that the deceased was either struck in the back by falling rock or struck his back against the cage— constitute such an uncertainty as to amount to no finding; and (2) that there is no sufficient competent evidence to support a finding of either cause of injury.

The findings in the alternative clearly neutralize each other. On the record both means of injury did not exist. If the deceased was injured by falling rock, he was not in-

jured by striking his back against the cage. If injured by the latter means, he was not injured by the former. The commission, on the record, was unable to find the one means or the other, two inconsistent means, the one destroying the other. The case is no better than if the issue in such respect had been left unfound. Confessedly such findings cannot support an award.

The further question is, Is there sufficient competent evidence to support the award as to either cause of accident or injury?

Admittedly, the deceased died from blood poisoning involving an infection about the middle of the lower part of the back. The certificate of death put in evidence by the applicants shows that the cause of death was "erysipelas, back and abdomen." A contributory cause, "abrasion on back," and "mine accident," is also stated in the certificate.

The testimony of most importance that the deceased was struck by falling rock is this: A witness testified that in the latter part of June, 1925, he was unable to give the exact date, while he was working with the deceased mucking and drilling at and about a sump at the bottom of a shaft in the mine of the Chief Consolidated Mining Company, in whose employ the deceased was, the deceased, on the forenoon of a day, grabbed the witness by the arm, and told him to step back; that rocks were coming down; that he (the deceased) was hit in the back with a rock; that the witness did not see deceased hit, nor, because of darkness, did he see any rock falling, but heard them splash in the water; that he did not know where the rocks came from, but thought they came from an ascending cage overloaded with muck; and that, when the falling of rock ceased, he and the deceased went back to work mucking and drilling. The witness further testified that in the afternoon of that day, or the next day, or the day after that, the deceased complained of being sick, said he had cramps, and asked the witness to ring for the cage to take him to the surface or to the main station, which was done; that the deceased afterwards came back to

work, the witness thought the last time after July 4th. Except the time when the witness heard rock falling and splashing in the water, the deceased had not stated to him that he was hit with a rock. The witness further testified that some time afterwards he told the company's temporary shift boss that the deceased had stated to the witness that the deceased was struck with a rock, but, after the death of the deceased, and an application for compensation had been made, and when the bookkeeper of the company was investigating the facts, the witness did not then state that the deceased had stated or claimed to him that he at any time had been hit with a rock; that he was asked whether the deceased had cut or scraped his back in any way, to which the witness in effect replied not to his knowledge, and at such time the witness did not state that the deceased had stated to him that he at any time had been struck with a rock, and testified that the reason he did not then make any such statement was because the matter had "slipped his mind."

Another witness employed at the mine testified that on the 28th, 29th, or 30th of June, 1925, men, including the deceased, working down the shaft, at about 3 o'clock in the afternoon came up to the main station for powder, and that, when the deceased got off the cage, he fell unconscious for a few minutes, and, when revived, complained of having been hit with a rock, and of his back hurting him. The hoist engineer of the company testified substantially to the same thing. The witness further testified that no examination was made of the deceased's back; that they did not know whether there was any bruise, cut, or abrasion on the back, and did not know whether there was any cut or tear in the rubber coat worn by the deceased. But other evidence was given to show that there was no cut or tear in the coat or other wearing apparel worn by the deceased at the time.

The widow of the deceased testified that on July 3d the deceased was about to go to Leamington, a short distance

from Eureka, to look after some mining claims in which he was interested. He then told her to paint his back with iodine, saying that he was stiff and sore. She did so, and further testified that there was an abrasion on the left side of the back; that the part was swollen and inflamed, looked like it had pus in it; and that the deceased told her he "got hurt slightly up at the mine," but said nothing more as to any accident or injury. She further testified that the sore looked like a scratch, and that the part involved was about as large as a dollar; that the deceased had not complained of anything until July 3d, and had not told her of any injury received by him other than that he got hurt slightly at the mine.

As the deceased was on this trip he called a doctor, who was the first doctor to see the deceased's condition. The doctor testified that he was called in on account of a sore on the deceased's back; that he found an abraded and open area, a sore about the center of the back, with an area of inflammation or redness extending around the sore; that he could not tell what caused it; and that the deceased stated to him he did not know exactly what the cause was; that, when asked if he had rubbed his back on the side of the car, the deceased replied that he did not think so, but was not sure; and that the deceased did not say anything to him about being hit with a rock. The doctor further testified that a blow on the back could produce a bruise without breaking the skin, and that a bruise could be an entering point for infection.

Another physician saw the deceased at Springville on July 5th. That physician testified that the deceased was quite ill, had a temperature of 103 and a pulse of 110, and had an abrasion, a scartch, on the back, and was suffering from blood poisoning; that the deceased told him that he was working at one of the mines, and said "something about going up in a bucket or something of the kind, and that his back was scraped or something of the kind," but said nothing about having been hit with a rock or a rock falling on

him. This witness further testified that, if a rock was of sufficient size and of the right shape, an infection could have started from an abrasion caused by falling rock striking the deceased on the back without cutting the coat worn by the deceased at the time, but as to whether the scratch or abrasion or infection was due to such cause the witness stated he could not express an opinion.

The deceased from there was immediately taken to a hospital. There he was in charge of the physician who signed the death certificate. To that physician the deceased stated that he was hurt three or four days before while he was crawling under a cage in the mine; that the corner of the cage was hanging down, and caught him on the back as he was crawling out from under it, but did not say anything about having been hit or struck with a rock. The witness further testified that the statement made by him in the certificate as to "mine accident" was solely on what the deceased had told him. The physicians further testified that the infection could have been caused by scratching the back with finger nails, and from many other causes.

The foregoing, in substance, is all the evidence bearing on the question in hand. Upon it the contention is made that there is no evidence, except hearsay, to support the award, either on the theory that the deceased sustained an injury by having been hit with a rock or by rubbing and striking his back against the cage. As is seen, the only evidence to show that the deceased rubbed or struck his back against the cage consists of statements made by him to the physisians. Such statements, in so far as they were disserving, were competent, but, in so far as they were self-serving, were hearsay and incompetent. There no doubt are occasions when a physician may testify as to statements, though apparently self-serving, made to him by his patient, when they are fairly necessary to enable the physician to diagnose or treat the ailment or condition of the patient, and to enable him to prescribe and act for the patient, or to aid the

physician in forming an opinion as to the character or extent of injury. The particulars or circumstances under which such evidence is admissible I need not now define or indicate, as they have here no relevancy. But statements or declarations of a patient as to the place, manner, or circumstances of an accident, or injury, or how received or occasioned, in so far as they may be self-serving, are hearsay and incompetent, but admissible, if adverse or disserving, unless coming under the statute as privileged communicatons, which here is not, nor can it be, claimed, since the physicians were called by the applicants themselves. In other words, when self-serving statements or declarations of a patient to his physician are received in evidence on the theory of enabling the physician to diagnose the case, or prescribe or act for the patient, or to form an opinion as to the character or extent of injury, they are received only for such purpose, and not as evidence of the place, manner, circumstance, or fact of an accident or injury, or how received or occasioned. Thus the statements of the deceased to the physicians that he received an injury to his back by rubbing it against or striking the cage in the mine, or coming in contact with it while crawling from under it, were self-serving as to such cause or fact of injury and hearsay, and thus may not properly be considered in favor of the applicants as evidence of the facts so declared; but, in so far as they were disserving and adverse, and as tending to dispute a contrary claim of accident or cause of injury, were admissible, and not open to objections to the hearsay rule. I thus am of the opinion that there is no competent evidence—nothing but hearsay—to show that the deceased sustained any injury in the mine by rubbing or striking his back against the cage, or that any such accident occurred.

It also is clear that the statement made by the deceased to his wife that he got hurt slightly at the mine was hearsay, and hence cannot be taken into consideration. That also is true as to the statement in the death certificate, "mine accident."

The statements made by the deceased to employees of the mine—except to his co-worker at the bottom of the shaft—that he was hit with a rock, were, as shown by the record, merely narrative statements of a past transaction, and not so closely connected with it as to be a part of it, and thus inadmissible under the res gestae rule, and therefore not an exception to, but within, the hearsay rule. The statement or declaration made by the deceased to his co-worker at the bottom of the shaft at the time rocks were falling and splashing in the water that the deceased then was hit in the back with a rock was competent and admissible under the res gestae rule, and thus was not open to an objection that it was hearsay. But that is the only competent and admissible evidence there is tending to show that the deceased was hit with a rock in the mine.

The question thus is, Is that evidence, though competent, for it cannot be aided by mere hearsay and incompetent evidence, sufficient to show that such an accident occurred and to support the award? Though standing by itself, and were it not self-contradictory, the question should be answered in the affirmative, which is doubtful; yet, as against it, are the disserving statements of the deceased—statements by the same declarant—made to each of the physicians of his own selection that the injury to his back was occasioned, not by a rock striking him, but by rubbing or striking his back against the cage, and, as related by him, in no way associated with any circumstances or occasion of falling rock. That is, the declaration so made by the deceased to his co-worker is inconsistent with, and neutralized by, those made by the deceased to his physicians, unless reconciled by further or other competent evidence, of which there is none.

We thus have a case where it is sought to establish the fact of an accident and injury to the deceased in the mine—an injury arising out of or in the course of his employment—solely by his own self-contradictory and unreconciled declarations each neutralizing the other, leaving the question,

as the findings are, in uncertainty and to conjecture. The commission being unable to find what accident occurred, or how it arose, or the nature or character of it, its finding, that it felt "certain" that the deceased, "while regularly employed by the Chief Consolidated Mining Company, injured his back," is but a conclusion, and, in the language of the Apostle, a mere statement of "things hoped for but not seen," and not found.

I think this case on the evidence is no better than the case of *Cudahy Packing Co.* v. *Brown*, 61 Utah 29, 210 P. 608, where this court said that "until some proof is adduced showing that an accident happened at the plant of the plaintiff or facts proven from which it can reasonably be inferred that such accident did happen at plaintiff's plant, we do not see how there is any substantial or any evidence save hearsay testimony from which the inference can be deduced that death resulted from an accident which happened in the course of deceased's employment," and "in this case we do not find any substantial testimony in the record, excluding the hearsay testimony, upon which the commission could base an award in favor of the dependents." So here, eliminating the hearsay testimony, as must be done, I think the evidence is insufficient to support the award.

It is contended that the views herein expressed respecting the conflicting declarations of the deceased deal with questions of credibility of witnesses and the weight to be given their testimony—matters wholly within the province of the commission. It is conceded that it is not within our province to pass upon the credibility of witnesses or the weight to be given their testimony. Were that the essence of the views expressed they confessedly would be untenable. But that is not the purport of them. The point is more analogous to a situation where, had the deceased been alive and giving his testimony, and had testified on direct examination that he was hit on the back by a falling rock, and on his cross-examination, or redirect, or further examination,

had testified that he was not hit by a rock, but struck his back against the cage as he was crawling from under it, the one statement of the same witness neutralizing or negativing the other, thus leaving the testimony of no legal probative value or at least in such uncertainty as to render the testimony valueless. True, there is this distinction: The conflicting declarations of the deceased come from the testimony on the one hand of the deceased's co-worker and on the other from several physicians. But there is not anything made to appear to render the testimony of such witnesses doubtful or improbable, or to justify a rejection of it, unless it be that of the co-worker. Whatever license the commission may have to test the credibility of witnesses or to weigh testimony does not give it the right to arbitrarily reject testimony. However, from the findings as made by the commission it clearly appears that it did not disbelieve or reject the testimony of the physicians, for the commission found that the injury resulted either from the deceased being struck by a falling rock, as the co-worker of the deceased testified the deceased declared, or by his striking or rubbing his back against the cage, as the physicians testified the deceased declared or stated to them. Thus the commission gave as much weight to the one as to the other. And therein lies the uncertainty, not only of the findings, but of the testimony as well. I do not see wherein such view is open to the objection that it is passing on the credibility of witnesses or the weight of their testimony.

Nor may the matter be aided by pointing to the statute that findings and conclusions of the commission on questions of fact are conclusive and final, and not subject to review. In considering the statute, this court time and time again has said that, notwithstanding the statute, on a review of an order of the commission granting or denying an award, it is within the province of this court to consider and determine whether on the record there is or is not sufficient competent evidence to support an order, and accordingly to affirm or annul it, and that such is a proper in-

terpretation of the statute has not heretofore been, nor, as I understand, is it now, questioned.

Further, though the commission had found that the deceased was injured by a falling rock striking him, which it did not—because of the uncertainty of the findings—and though it also be assumed that the declaration of the deceased to his co-worker at the time of the falling of the rock was competent and admissible under the res gestae rule, still the further question is, Was such declaration alone sufficient evidence to support a finding that the injury was occasioned in such manner and in such respect sufficient to support an award based thereon? I think that doubtful.

That, in my opinion, is all the competent evidence in the record to support the award. When we have such a finding based on such testimony alone, and an award made thereon, it will be time enough to express an opinion respecting it.

The declaration of the deceased, when hoisted from the mine, that he was hit with a rock, also is referred to. Such declaration was not res gestae, and hence was not admissible on such ground. The falling of rock testified to by the co-worker was not at that time. It was in the forenoon of a day. When the falling of rock ceased, the deceased and his co-worker went back to work at the bottom of the shaft. It was the afternoon of that day, or the next day, or the day following that, as testified to by the deceased's co-worker, that the deceased, at his place of work, complained of "cramps," and at his request was hoisted to the surface. Statements then made by him to those at the surface were in no sense res gestae, and could not properly be considered as such.

Further, that the infection resulted from a rock striking the deceased is but conjecture. The physicians but testified that a rock of the right shape striking the deceased's back might or could produce a bruise, or an abrasion, which could harbor infections and poisoning germs producing inflammation and blood poisoning; but further testified that the infection also could be due to many other causes. Whether

the infection was due to the deceased's having been struck by a rock, or to one of many other causes, the physicians could not, and did not, express an opinion. Testimony or expressed opinions that one hit by a falling rock might or could produce a bruise or an abrasion from which blood poisoning could result is not corroborating testimony that the person was hit with a rock. As well say that one falling out of a window might or could break his leg is corroborating proof that he fell out of a window. It is not even made to appear that the deceased's having been hit with a rock was the probable or most likely cause, especially when considered in connection with the disserving statements of the deceased that such was not the cause.

I am in perfect accord with rulings that an order of the commission should not be annulled for mere error in admitting hearsay or other incompetent evidence when there is sufficient competent evidence to support the order. That the commission is not the exclusive or final judge as to the competency of evidence adduced before it is clear. We, in effect, have held that, by holding as we have that in considering the question of sufficiency of evidence to support an award all hearsay and incompetent evidence is excluded from consideration, and that an award will be set aside if supported only by hearsay or other incompetent evidence, or if not supported by sufficient competent evidence. When we hold, as we have, that awards or orders when supported by sufficient competent evidence will not be disturbed, though hearsay or other incompetent evidence was received, such holding is largely on the indulgence of a presumption that the commission, in making findings and orders based thereon, did so, or were required to do so, upon a consideration of only the competent and to the exclusion of the incompetent evidence. However, if, on a record, it is mainfest and unmistakable, or indubitable, that the findings were in fact induced or influenced by a consideration of hearsay or other incompetent evidence, and but for which other and different findings would have been made or conclusions

reached, or which on the record were demanded, then logically does it follow that such an award or order is so tainted as to require its annulment. Certain it is that to justify such a conclusion by us on a review of a record requires a clear case. Such, in my opinion, is the character of case now before us, one where about all the evidence received was hearsay, and one where the findings were not only influenced, but dominated and controlled, by it. Making or refusing an award on findings so manfiestly and unmistakably tainted and induced is as much an abuse of discretion and power and a capricious and arbitrary and not a judicial exercise of it as is the making of findings and orders based only on hearsay or other incompetent evidence.

I, therefore, am of the opinion that the order of the commission granting the award should be annulled, and the cause remanded for further proceedings, and in such particular concur in the result reached by the prevailing opinion.