VECCHIO et al. v. INDUSTRIAL COMMISSION et al.

No. 5311. Decided May 18, 1933. (22 P. [2d] 212)

*O. K. Clay*, of Price, for plaintiffs.

*Joseph Chez*, Attorney General, and *Marl D. Gibson*, of Price, for defendants.

MOFFAT, Justice.

This is a petition seeking the reversal of a decision of the Industrial Commission of Utah in which Luisa Vecchio was denied compensation for the death of her ■ son, Guy Vecchio.

The defendant Independent Coal & Coke Company is a self-insurer and the deceased, Guy Vecchio, was an employee of the company on October 19, 1931, and had been for some time previous. The alleged injury occurred on October 19, 1931. On October 20th, Dr. R. W. Robinson, the company physician, was called at which time deceased showed evidence of blood poisoning. These symptoms progressed steadily until November 4, 1931, on which date Guy Vecchio died. Application for compensation was made to the industrial Commission and, after a hearing January 13, 1932, compensation was denied. The question of dependency is not an issue, being amply supported by the evidence. On March 10, 1932, the commission made its findings and rendered its decision denying compensation, as follows:

Findings: "I. That on November 4th, 1931, deceased, Guy Vecchio, died from acute general streptococcic septicaemia, induced from a minute abrasion over anterior mid-tibial region of right leg, or from a focal infection of his throat, tonsils, or gall bladder.

"II. The Commission further finds that the cause of the minute abrasion over the anterial mid-tibial region of the right leg is not disclosed by the record, and there is no competent evidence to prove that the deceased, Guy Vecchio, sustained said abrasion while in the discharge of his duties as an employee of the defendant Independent Coal & Coke Company."

■

Conclusions: "In view of the foregoing facts, the Commission concludes that there is no evidence other than hearsay as to the alleged accidental injury, and that therefore, compensation should be denied."

From this decision, the applicant applied for and was granted a writ of review and contends:

"(1) The Commission acted without and in excess of its powers; (2) there is no evidence to support the findings of the Commission and that the findings do not support the conclusions and decision."

Three physicians testified. The other witnesses testified to matters relating to the question of dependency with the exception of Virgil Bullock, a fellow workman of Guy Vecchio. Aside from the testimony relating to dependency and that of an expert or skilled character furnished by the physicians and with the exception of the res gestae evidence of Virgil Bullock, all the testimony was hearsay. The commission's conclusion "that there is no evidence other than hearsay as to the alleged accidental injury" makes the only testimony to be examined that of the four witnesses referred to, as to the evidence upon which findings may ultimately be based as to the injury and cause of death.

Dr. F. F. Fisk testified that he knew Guy Vecchio; that he was called in to consult with Dr. Robinson and found Guy Vecchio to be "suffering from one of the most severe cases of blood poison, septicaemia," resulting from infection, caused by a "scratch or wound on his leg." The scratch was "a light scratch, or pin scratch," and "was scarcely able to recognize it at the time. The attending physician had opened it in several places and drained it. There was no apparent foci of infection of any consequence or any extent visible at the time." On cross-examination the doctor was asked: "Don't you think it possible, doctor, that the blood poison might have been caused by some kind of a focal infection like bad tonsils?" to which he replied, "Absolutely not." The doctor further testified that as to how, or when, or where the scratch was received he knew nothing.

Dr. J. C. Hubbard testified that he saw Guy Vecchio about five days after he had been in the hospital in consultation with Dr. Robinson and at that time Guy had an infected leg. Specifically, Dr. Hubbard further testified:

"Q. Have you an opinion as to what caused this thing in his leg? A. It was a minor scratch on the member, the infected leg. In my opinion it was a septicaemia from a focal infection, either his throat, or tonsils, or gall bladder, some infected organism within his blood stream.

"Q. You examined the injured spot or scratch on his leg? A. Yes.

"Q. About how large was it? A. It was of a minor nature, a small scratch, with no contusion, no laceration, no ecchymosis, no swelling where the scratch was.

"Q. In those words you take in bruising don't you? A. Yes.

"Q. In your opinion the poison which caused his death was not caused by the scratch? A. Not from the injury, if he did have an injury. You see the scratch was of such minor consequence."

On cross-examination Dr. Hubbard testified:

"Q. Dr. Robinson was there when you made the examination? A. Yes.

"Q. What would you say if Dr. Robinson signed the death certificate and in it he said the cause of death was as follows: 'Acute general streptococcic septicaemia induced from a minute abrasion over anterior mid-tibial region of right leg'? A. That is all right, but I think it would be hard to say that it was indued from that."

Dr. Robinson was the company doctor and the attending physician from the beginning of Guy Vecchio's illness, which terminated in death. The doctor testified that he first saw Guy Vecchio in relation to his fatal illness on the 22d day of October; that he had a fever and an increased pulse. The next day the leg was a little bit swollen; discovered a minute abrasion very much like a small scratch midway between the ankle and the knee on the anterior surface. There was infection around the scratch, and attributed the fever to the infection. There developed swelling right around the scratch. The scratch could have been and was most likely the portal of entry of the infection, but would not rule out focal infection. Made out the death certificate. The death

certificate is in evidence and contains the statement as to the cause of death being: "Acute general streptococcic septicaemia induced from a minute abrasion over the anterior mid-tribial region of the right leg."

Virgil Bullock testified that he was acquainted with Guy Vecchio; that he worked for the Independent Coal & Coke Company; that he was working with Guy shortly before Guy was taken sick. Then specifically answered:

"Q. Do you remember an occasion shortly before he was taken in bed sick being in the mine working with him? A. Yes, sir. Q. I wish you would tell about that, how that occurred and the facts surrounding it? A. I was 30 to 50 feet back of the loader, turning the water taps and putting water in the loader. I was down on my knees, I don't know which knee, to turn this water on, and my attention was directed by a mumbling or words, I don't remember what the exact words were, and that is what directed my attention, and I turned around, and to the best of my knowledge I saw Mr. Vecchio in a crouched position. To the best of my knowledge, and my remembrance I asked him what was wrong, or something that I said to him, to find out what the trouble was. He says: 'I have hurt my leg' or 'legs,' I don't know which he said. He got up then, and I asked him, 'Do you want me to couple your trip,' and he said, 'no, I think I can make it,' or something like that."

We think the statement competent as a part of the res gestae. *Chief Consol. Min. Co.* v. *Ind. Comm.,* 70 Utah 333, 260 P. 271. When the witness' attention was called to the distance he was away, he then said 15 or 25 feet.

The foregoing summary and quotations from the testimony cover all of the evidence admittedly competent and free from objection on the ground of hearsay. We have excluded all hearsay testimony in the summary, not that the Industrial Commission may not hear and consider hearsay testimony, but for the reason that the Industrial Commission have no right to find material facts based on hearsay testimony. Findings must rest upon relevant and competent testimony of sound and probative character. Such evidence may be either circumstantial or direct. Facts may be in-

of direct testimony is not conclusive that an injury did not occur in any particular case. Such reasonable inferences may be drawn from the facts proved as are consistent with the theory contended for by either party. *Cudahy Packing Co. of Nebraska* v. *Brown et al.,* 61 Utah 29, 210 P. 608, and cases cited.

A material finding, based entirely on hearsay or other incompetent evidence, cannot be permitted to stand as the basis of an award under the Workmen's Compensation Act (Comp. Laws 1917, § 3061 et seq., as amended), whether such award is favorable to or against the applicant claiming to have been injured. *Zion's Co-op. Merc. Inst.* v. *Ind. Comm.,* 70 Utah 549, 262 P. 99, and cases cited. It is said in the case of *Harness* v. *Ind. Comm.* (Utah) 17 P. (2d) 277, 279:

"This court may not disturb the findings of fact made by the commission unless it appears that the commission has applied an illegal standard, or has found a fact without evidence to support it, or has made a finding against uncontradicted credible evidence. On an application to this court the question of whether there is any evidence to support a finding of the commission, or whether there is any justifiable reason for making a finding against uncontradicted credible evidence, is one of law. *Kavalinakis* v. *Industrial Commission,* 67 Utah 174, 246 P. 698."

It is likewise by a long line of decisions of this court held that findings made by the commission upon conflicting evidence are binding upon this court and will not be disturbed. *Chase* v. *Ind. Comm.* (Utah) 17 P. (2d) 205. The statute is also there referred to. Laws of Utah 1919, ch. 63, pp. 164, 165, § 3148, subds. (b) and (c).

Taking into consideration these rules and decisions and being mindful of the conditions and limitations imposed, let us proceed to examine the findings and make application of the competent evidence relating thereto.

The commission, by the first part of finding I, definitely found: "That on November 4, 1931, deceased, Guy Vecchio, died from acute general streptococcic septicaemia, induced from a minute abrasion over anterior mid-tribial region of

ferred from the surrounding circumstances, and the absence right leg." Had finding I consisted only of the part just quoted no complaint or objection could be made thereto. There is ample evidence in the record to sustain that finding of fact. The testimony of Dr. Fisk and Dr. Robinson is both clear, positive, and definite as to that point, in fact, in so far as the cause of death is concerned, Dr. Hubbard is also in accord with Dr. Fisk and Dr. Robinson.

That part of the finding stated by the commission in the following language, "induced from a minute abrasion over anterior mid-tribial region of right leg, or from a focal infection of his throat, tonsils, or gall bladder," is the center of controversy as to finding I. That there was a "minute abrasion over anterior mid-tibial region of right leg," all the evidence establishes beyond controversy, and with a unanimity seldom found in a matter about which a controversy may arise. The size of the abrasion is the only matter of variation. The commission found the abrasion to be minute. The point of departure, if there be one in the evidence, arises over the word "induced." That there is ample evidence to justify the commission in finding that the infection from which the blood poisoning resulted was "induced" from the abrasion on the leg is manifest. The finding is ambiguous, indefinite, and uncertain, and not in proper form. The finding should have been and can be made definite. It can be corrected. Whether the commission could find, when put to the issue, that the infection had its portal of entry at a point other than the minute abrasion is a matter for the commission to determine from a preponderance of the evidence. If the evidence is equally balanced, then the party having the burden of proof must fail. A finding that is not a finding cannot be sustained. We are left to guess upon the matter. If one of the alternatives be taken and a further finding made as to an accident or injury having occurred while engaged in or arising out of the course of employment, then the one decision would be supported by the evidence, while if the other of the alter-

native were adopted a very different decision could be supported by the evidence.

The interesting factors in the analysis of what is set forth in both findings I and II here under discussion are that there is a causal factor in each finding. In finding I the septicaemia, the commission finds, was induced or caused from the abrasion or from a focal infection. In finding II the commission finds that the cause of the abrasion "is not disclosed by the record" as, or for the reason, or because, "there is no competent evidence to prove that the deceased, Guy Vecchio, sustained an abrasion while in the discharge of his duties," etc.

As we have seen from the testimony, Virgil Bullock is not contradicted nor inpeached. His testimony stands as the only evidence on the point. Bullock says he saw Guy Vecchio in a crouched position, heard some sounds, and upon asking Guy Vecchio what the trouble was, Vecchio replied, "I have hurt my leg."

In the case of *Chief Consol. Min. Co. v. Ind. Comm.*, 70 Utah 333, 260 P. 271, 272, we find the following statement of the facts and circumstances: A co-workman testified that "he and deceased were working in the bottom of the shaft"; that deceased "got hit with a rock"; that deceased also said "he got hit with a rock on the back." Shortly after deceased left the mine, he became unconscious, recovered and went home; later developed blood poisoning and died. The symptomatic development of the infections in the two cases is strikingly similar. In each case there was an abrasion. At the time of the accident neither seemed to know about the abrasion. Each developed an infection and blood poison. Each died from the blood poison.

In the instant case we start with the declaration of being hurt on the leg, shortly after, within two or three days, chills and fever; the abrasion was then discovered; the abrasion at the time of discovery was infected; blood poison or general streptococcic septicaemia resulted producing death.

The declaration of the deceased, made to his companion at

the time deceased injured his leg and was in a crouched position, that he had hurt his leg was of the res gestae and was not open to objection that it was hearsay. *Chief Consol. Min. Co.* v. *Ind. Comm.*, supra. From the competent evidence thus submitted, is it a reasonable inference from the facts proven and the surrounding circumstances to properly infer that the abrasion discovered by the physician when first called, which was by the physician thought to be the portal entry of the infection, which abrasion resulted from the injury (hurt "leg") about which deceased complained while at work in the mine a day or so previous? Assuming that all the testimony that could be by any rule classed as hearsay is equally balanced by circumstances or selfserving and disserving statements, and what consideration, if any, may be given to such (and we think such testimony tends to support rather than to destroy the reasonable inference that logically and naturally results from the competent evidence), we are of the opinion the inference is supported clearly within the rule of *Cudahy Packing Co. of Nebraska* v. *Brown*, supra.

This brings us back to finding I. Deceased died from "acute general streptococcic septicaemia." The commission is not bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure, other than those made by the statutes specially applicable, and the spirit of the procedure and taking of evidence is such as is best calculated to ascertain the substantial rights of the parties. Comp. Laws Utah 1917, § 3149. Still the question as to whether or not there is in fact any substantial uncontradicted evidence either for or against a finding is a matter of law. *Globe Grain & Milling Co.* v. *Ind. Comm.*, 57 Utah 192, 193 P. 642.

Ordinarily the opinion or conclusion of a witness with respect to matters in issue or relevant thereto cannot be received. The rule, however, is not absolute. It frequently occurs that the only way to make proof of a fact is by means of opinion evidence. A witness having special knowledge

or skill on a subject, outside of the ordinary realm of human experience, may be permitted to state his inference from facts observed and connected with his specialty.

"Such a witness is frequently termed on expert, but this is inaccurate, for the skilled witness testifies as to the result of his own observation, and occupies the same position as any other witness except that within certain lines he possesses a superior knowledge which enables him to understand, as one without such special knowledge could not, what he has observed, although he may also be competent to testify as an expert on hypothetically stated facts." 22 C. J. 633, § 728.

Dr. J. C. Hubbard's testimony is the only testimony in the record, if competent and admissible, that may be considered in support of the final alternative of finding I to the effect that the septicaemia from which Guy Vecchio died was induced or caused "from a focal infection of his throat, tonsils, or gall bladder." What a "focal" infection is, as distinguished from any other, is not made to appear. Without summarizing all of Dr. Hubbard's testimony the record discloses that he made no examination of the throat, tonsils, or gall bladder. He was not, therefore, qualified as a skilled witness to testify as to the condition of those parts. He was asked no hypothetical question describing the condition of them and upon which he could express an expert's opinion. There is therefore no competent evidence in the record to support or justify the alternative finding that the septicaemia was caused from a focal infection (and again there is no explanation as to what a focal infection is) of the throat, tonsils, or gall bladder. The ordinary meaning of focal is pertaining to a focus, a center point, a point of concentration, a center of activity, interest, attraction, or attention. Webster's International Dictionary, 841. This part of the finding having no support in the evidence is as though it were not there. It is further to be noted that on matters about which Dr. Hubbard may have testified as a skilled witness from facts within his observation of the infected parts that his testimony is corroborative of Dr. Fisk's and

Dr. Robinson's testimony. Otherwise, Dr. Hubbard's answers manifest an evasiveness as to the particular matter of the portal of entry of the infection. Note:

"Q. In your opinion the poison which caused his death was not caused by the scratch? A. Not from the injury, if he did have an injury. You see the scratch was of such minor consequence."

Further: "Q. You know of a lot of cases where people have developed septicaemia from a pin point? A. Yes.

"Q. Though you could not have observed the place where the pin had penetrated the skin? A. Yes.

"Q. But still you could have septicaemia from it? A. Yes.

"Q. And from that a person would die? A. Yes.

"Q. And that could also come from a bruise? A. Yes.

Then again: "Q. It is you opinion in this particular case that the point of infection was not at the minute abrasion on the leg? A. No, sir.

"Q. What would you say if Dr. Robinson signed the death certificate and in it he said the cause of death was as follows: 'Acute general streptococci septicacemia from a minute abrasion over anterior mid-tibial region of right leg'? A. That is all right, but I think it would be hard to say that it was induced from that.

"Q. Yes, but the attending doctor that was there says it was induced by this abrasion over the anterior mid-tibial region of the right leg. Would you agree or disagree with it? A. I would disagree with the 'induced' with an injury of such minor consequence."

It is to be observed also that Dr. Hubbard did not see the patient until five days after the attending physician had the patient placed in the hospital.

From what has been said it follows that there are no facts in the record showing that the conclusions of Dr. Hubbard as to the source or cause of the infection originated in the tonsils, throat, or gall bladder of the patient, or that he knew of any such fact upon which to base such opinion, and this is true within the rule that a lay witness or a witness possessing skill in a particular matter may be permitted to state a conclusion based on facts which he has observed, where that is the only method of arriving at the true situation. There is therefore no competent, tangible evidence in support of the alternative part of finding I. This taken in

connection with the recognition of the evidence that the proof of the injury to the right leg of Guy Vecchio is supported by competent evidence other than hearsay, to the effect that he sustained the abrasion while in the discharge of his duties as an employee of the Independent Coal & Coke Company, it follows that the order denying compensation is annulled.

The cause is remanded to the Industrial Commission of Utah for such further proceedings not inconsistent herewith as may be proper. Plaintiff to recover costs.

STRAUP, Chief Justice.

I concur in the result. I do not fully concur in the statement that the commission may hear or consider hearsay or other incompetent evidence, if by that it is intended to imply that the commission has the right to do so, or to base a finding partly on hearsay or other incompetent evidence and partly on competent evidence.

I think we all agree that in accordance with the familiar rules of evidence the commission has no right to consider incompetent evidence or even partly base a finding upon it. But here lies the difficulty. The commission though on a hearing or trial of issues is required to exercise quasi judicial functions, yet is not a court of law nor are its members required to be lawyers or to be familiar with rules of evidence. A review of rulings of a court of law with respect to competency and admissibility of evidence is, therefore, not applicable to a tribunal of laymen in admitting or receiving evidence. In the one instance we may reverse judgments for prejudicial error in admitting incompetent evidence but in the other we may not do so, though the commission received hearsay or other incompetent evidence and though it may have considered such evidence in arriving at ultimate results. In the production of evidence, the practice before the commission has been, and as it should be, to give

the parties a rather free rein and within reason to admit in evidence about everything offered by either party; and though in arriving at ultimate findings or conclusions incompetent evidence may have been received and considered by the commission, yet findings may not be disturbed by us if, on the record, they are supported by sufficient competent evidence. In other words, whatever error may have been committed by the commission in considering incompetent evidence in arriving at ultimate results, may not as in a case of a court of law be corrected and the case remanded. But that does not mean that the commission has the right to consider incompetent evidence or even partly base a finding thereon. On a review of the record in such particular we eliminate whatever incompetent evidence may have been received and consider only the competent evidence; and if sufficient competent evidence is found in the record to support a finding it is approved by us, otherwise it is disapproved and annulled. In so doing we do not consider whether the incompetent evidence is in harmony or in conflict with the competent evidence, for in approving or disapproving a finding, we look alone to the competent evidence.

ELIAS HANSEN, Justice.

I concur in the order disapproving the findings mentioned by Mr. Justice MOFFAT. I also concur in what is said by Mr. Chief Justice STRAUP and by Mr. Justice FOLLAND.

FOLLAND, Justice (concurring).

The question whether or not the testimony of the witness Bullock with respect to an alleged injury to Guy Vecchio in the mine on October 19th, wherein he quoted Vecchio as saying, "I have hurt my leg" or "legs" was competent evidence is one of law which this court may pass upon. Having now decided that the evidence was competent the Industrial Commission on a rehearing is required to give it consideration and weight, including inferences as naturally follow

from such testimony. Because of the error on the part of the commission in excluding this testimony from its consideration in making findings, on the theory that it was hearsay, the order should be reversed and the cause remanded for further proceedings. The burden, however, is on the applicant to show that an injury was received by the deceased in the course of his employment and that such injury was the cause of death. The finding of the commission that the streptococcic septicaemia from which deceased died was induced from one of two causes without making a definite finding thereon is subject to objection, but this finding is not of first importance on the present record.

The second finding is that there is no competent evidence to prove that the deceased sustained the abrasion over the anterior mid-tibial region on the right leg while in the discharge of his duties as an employee of the Independent Coal & Coke Company. The evidence of Bullock with respect to the alleged injury in the mine wherein the deceased said, "I have hurt my leg" or "legs" while competent to be received and considered, yet fails to identify the scratch or abrasion on the leg as having been caused on that occasion by accident. If such evidence stood alone, an inference might be justified that the abrasion or scratch was caused by the accident. The abrasion could have been acquired outside of employment. How it was obtained is a matter of speculation. I am not prepared to say that on this record the Industrial Commission was, as a matter of law, required to reach the conclusion that the scratch or abrasion was caused by an accident received in the course of employment. It will be time enough to pass on the question of whether or not the evidence will sustain an award if the commission should find from all the competent evidence before it that the abrasion was caused by accident arising out of the employment and that such abrasion caused or gave rise to the infection which caused his death. That question at this time is not before us. On a new hearing other evidence may be adduced.

The criticism of Dr. Hubbard's testimony is not wholly justified by the record. If it were, I could concur in what is said in the prevailing opinion with respect thereto. Dr. Hubbard was asked by Commissioner McShane: "Doctor, did you examine his teeth and tonsils, and bladder and urinary tract for infection or for an infected process? A. He had an infection through his throat. He could have had an infection in his kidneys. Dr. Robinson checked up on his urine." The inference arises from this question and answer that Dr. Hubbard did examine the throat of the patient and found an infection there, but apparently made no examination of the other parts of the body to discover whether or not there was an infected process. Having examined the throat, and found infection, he is entitled to give his opinion with respect to whether or not the septicaemia in the leg was caused or contributed to by the throat condition.

I also concur in the concurring opinion of Mr. Chief Justice Straup.

EPHRAIM HANSON, Justice (concurring).

I think the order of the Industrial Commission should be vacated. I fully agree with the concurring opinion of Mr. Chief Justice STRAUP.